In re Brown.

---

No. 20,641.

*In re* MARY A. BROWN, *Petitioner.*

SYLLABUS BY THE COURT.

1. PARENT AND CHILD—*Parental Right to Custody of Child—Order of Probate Court.* The right of a mother to the custody of her child is not impaired by an order of the probate court appointing a guardian, notwithstanding a recital therein that the guardianship extends to the person as well as the property, where no issue concerning the mother's fitness in that regard was actually presented or determined in the proceeding in which such appointment was made.

2. SAME—*Mother Entitled to Custody of Child—Evidence.* The evidence, held not to require depriving a mother of the custody of her child.

Original proceeding in habeas corpus for the custody of a child. Opinion filed July 8, 1916. Judgment for petitioner.

*A. M. Harvey,* of Topeka, *W. W. Harvey,* of Ashland, and *W. E. Broadie,* of Kinsley, for the petitioner.

*George A. Neeley,* of Hutchinson, for the respondents.

The opinion of the court was delivered by

MASON, J.: The father of Louise F. Carter, now seven years of age, died intestate in November, 1914, leaving considerable property. His widow, the child's mother, was appointed her guardian. In August, 1915, she resigned as guardian, and at her request P. H. Johnson was appointed in her place. He assumed control of Louise and placed her in the immediate care of Henry Ficken and his wife. The mother (now Mary A. Brown, having remarried) brings this proceeding against Johnson and the Fickens, asking that the custody of the child be restored to her. The guardian at first filed a disclaimer, but now resists the application on the ground that by virtue of his appointment in that capacity he has the legal right to con-trol his ward, and that the character of the petitioner renders her an improper person to be charged with that responsibility.

1. It has been said on the one hand that in the absence of a statute to the contrary a guardian of the person has a right to the custody of his ward even as against parents (21 Cyc. 62), and on the other that a statute giving a preference to parents in that regard is merely declaratory of the common law (*The People v. Hoxie,* 175 Ill. App. 563). Some of the cases cited as bearing on the question are affected by local statutes, and some by the archaic notion that the mother is entitled to little con-sideration in the matter. It is not necessary to attempt to state any general rule by which to solve controversies between parent and guardian. Each must necessarily be determined according to its peculiar facts. In the present instance there is no difficulty in saying that the claim of the petitioner to the con-trol of her child is not affected in the slightest degree by the appointment of the guardian. The original entry of the order of the probate court making such appointment, in August, .1915, did not in terms refer to guardianship of the person, but such a reference was inserted after this proceeding was begun, with the knowledge of the present probate judge, by the oc-cupant of the office at the time the order was made, who testi-

fied that the additional recital was omitted from the original entry by oversight. This was a somewhat offhand way of undertaking to correct a court record, but if the alteration is given full force it does not militate against the conclusion already stated. The mother, as the surviving parent, was the natural guardian of the person of the child. (Gen. Stat. 1909, § 3966.) The statute makes no express provision for any other guardian of the person during her life, and there could be no occasion for such an appointment unless she were found to be unfit for the trust. In the proceedings in the probate court there was no allegation, proof or finding of her unfitness. The only justification suggested for constituting some one else the guardian of the child's person is based on the mother's resignation as guardian, coupled with her request for the appointment of a successor. The order appointing her purported to constitute her the guardian of the person as well as of the property of her child, but to this extent was without any field of operation since the statute invested her with that trust. Her resignation, which was occasioned by her lack of ability to look after the child's property interests, followed the form used in her appointment, and spoke of her guardianship as relating to the person and property of the ward. Her request for the appointment of a successor employed the same formula. Her intention was clearly to surrender the authority which she had derived from the order of the court, and have it transferred to some more competent business manager. The language she adopted (doubtless that of the printed forms in use for such purposes) can not be given the effect of an admission on her part that she was not a fit person to have the custody of her child. That issue was not involved or determined in the probate court proceedings, and without such determination there could be no valid appointment of a guardian whose right to the control of the person of the child would be superior to that of the mother.

2. The prayer of the petitioner should therefore be granted, unless this court is convinced of her unfitness. No useful purpose would be served by setting out the evidence in detail, or even in substance. She is shown to have acted at times with bad judgment and indiscretion. A part of the testimony, which if given full credence would justify a stronger char-

acterization of her conduct, was not directly contradicted, as she did not take the witness stand, but need not on that account be accepted as entirely accurate, its nature and the surrounding circumstances suggesting the probability of mistake or exaggeration. She undeniably acquired an unfortunate reputation in the community in which she was living, which may have caused harsher inferences to be drawn from her actions than would otherwise have been the case. That some feeling was engendered which colored local public opinion in relation to the case is evident from this circumstance: The probate judge testified that shortly before the petitioner applied to this court the report was circulated that her attorney was engaged in a plot to kidnap the child—that twenty people talked to him about it. No evidence is necessary to convince the court that his informants, however sincere in their belief, were mistaken. The petitioner's affection for her child is abundantly established. Confidence in her fitness to care for her has been expressed by a number of witnesses who have been in a position to judge of her character by personal observation, including several who became acquainted with her after a recent change in her residence. Nothing to her discredit has been shown with respect to her conduct since that time. A parent will not be deprived of the custody of a child on the ground of unfitness unless that objection is sustained by clear and satisfactory proof. (*Pinney v. Sulzen,* 91 Kan. 407, 137 Pac. 987.) The evidence here is not regarded as meeting that requirement, and the prayer of the petition will therefore be granted, conditioned, however, upon the giving of a bond by the petitioner in the sum of $1000 for the retention of the child within the state, and obedience to any further order that may be made by the court, jurisdiction of the case being retained. The respondents, having acted in evident good faith in the discharge of a responsibility placed upon them, will be allowed to recover their costs.