No. 35,815

Mrs. Gunnar Johnson, *Appellee*, v. Mrs. C. H. Best, *Appellant*.

(135 P. 2d 896)

Opinion filed April 10, 1943.

*Robert R. Hasty*, of Wichita, argued the cause for the appellant.

*Allan B. Phares*, of Wichita, argued the cause for the appellee.

The opinion of the court was delivered by

Wedell, J.: This was a proceeding in habeas corpus by a mother to obtain the custody of her eight-year-old daughter whom she previously had placed with respondent under an agreement for care and maintenance. Petitioner prevailed and respondent appeals.

Appellant contends, first, the district court had no jurisdiction in the premises, and second, if it had jurisdiction, it erred in finding appellee was a proper person to have the custody of her child. The contentions will be treated in the order stated.

Patsey Ruth Wirth was one of two illegitimate children of the petitioner, Mrs. Gunnar Johnson. The mother's maiden name was Frances Wirth. The mother was obliged to work for a living, and about six years prior to the trial of the instant case placed Patsey

Ruth under the care of appellant, Mrs. Clarence H. Best, of Wichita, pursuant to an agreement whereby appellee agreed to pay $15 per month for the child's care and maintenance. After approximately three and one-half years the agreement was changed to $3.50 per week. In February, 1941, the mother went to California, and during that month, while working in a restaurant, met Gunnar Johnson. They were married June 11, 1941, and his wife gave birth to the third child in December, 1941. It appears Johnson was fully advised concerning the illegitimate children. The hearing in the instant proceeding was held in September, 1942, at which Johnson testified.

Gunnar Johnson worked for a lumber company in California and earned somewhat over $200 per month, including services for overtime. He owned a modest home and was paying $30 per month on the purchase price. He is forty years of age and his wife is twenty-seven years of age. The Johnsons came to Wichita in August, 1942, to get Patsey Ruth. Johnson testified he and appellee were getting along well and that he desired to adopt the child in question and give it a home and an education. Appellee was considerably in arrears in payments due for support of the child. She requested the custody of the child to which, it appears, appellant had become greatly attached. The child had been well treated and seemed equally fond of appellant. There was testimony appellee and her mother and a sister had offered to pay appellant the amount due but that appellant on various occasions postponed the time of settlement with the result no definite amount due was agreed upon. It appears appellant refused to deliver the child for the reasons the money due her had not been paid and that she did not consider appellee a proper person to have the custody of the child.

While appellee was in California, appellant petitioned for and was appointed guardian of the person of Patsey Ruth by the probate court of Sedgwick county. The appointment was without notice to appellee. The petition for appointment did not allege appellee had abandoned the child or that she was an improper or unfit person to have the care and custody of her child. It merely recited the minor had no legally-appointed guardian of her person and that in order to comply with the regulations and requirements of the board of education of the city of Wichita, it was necessary the child have a guardian. The probate judge testified the guardianship was termed a "school guardianship," its purpose being to enable ap-

pellant to send the child to school without paying tuition charges, and that he claimed no other supervisory power over the child. Other facts pertaining to the reputation or character of appellee might be related but in view of the conclusion we have reached we deem that unnecessary.

Briefly stated, appellant's first contention is the district court had no jurisdiction to entertain a proceeding in habeas corpus to determine the mother's right to the custody of her child after a guardian for the person of the child had been appointed by the probate court. In other words, she urges the probate court had such exclusive jurisdiction over the person of the ward as to preclude the right of every other court to inquire and determine whether the liberty of the child was illegally restrained. No authorities that district courts or the supreme court of this state, also vested with jurisdiction in habeas corpus cases, are divested of such jurisdiction under the existing circumstances, are cited. In support of her theory appellant, in substance, argues as follows: In the instant case it was necessary a guardian should be appointed to send the child to school and G. S. 1941 Supp. 59-1803 provides that when it is necessary a guardian should be appointed for a minor child, the probate court shall make the appointment; the guardian appointed is subject to the control and direction of the probate court in all things (G. S. 1941 Supp. 59-1804); the probate court has power to control the official acts of guardians and to remove them (G. S. 1941 Supp. 59-301 [6]); probate courts have such equitable powers as may be necessary and proper to fully hear and determine any matter properly before them (G. S. 1941 Supp. 59-301 [12]). It is therefore argued appellee's only remedy was to have appellant removed as guardian by the probate court which appointed her, before appellee, as the natural guardian, could assert her rights to the custody of the child in the district court.

Manifestly this was not an action for the removal of a guardian, appointed legally or otherwise. The question was who, under the existing circumstances, was entitled to the custody of the child and whether the district court had been divested of jurisdiction to determine that issue in a proceeding in habeas corpus.

We do not deem it necessary in this case to analyze the various provisions of the new probate code relating to the appointment or removal of guardians. In passing, we may, however, state that while we know of no provision, and none is cited, for the appoint-

ment of school guardians as such, the appointment of appellant clearly was not intended to clothe her with full and complete statutory powers of guardianship over the person of the child and no such supervisory power was intended to be, or was, exercised by the probate court which made the appointment. G. S. 1941 Supp. 59-2258 provides who may petition for guardianship and it states whose petitions shall have priority. G. S. 1941 Supp. 59-2257 prescribes what facts such a petition shall contain and G. S. 1941 Supp. 59-2259 provides in what instances notice of hearing shall be given and to whom. The petition for the appointment of appellant did not confer jurisdiction on the probate court to appoint a guardian over the person of the child which would be binding on the mother, the natural and statutory guardian of her child. However, we need not rest the decision on the invalidity of appellant's appointment as guardian.

Appellee at no time surrendered her natural rights of guardianship. Appellant was merely appellee's temporary agent for the care of the child under contract. The father and mother are declared the natural guardians of the persons of their minor children by express statutory provision. If either dies, or is incapable of acting, the natural guardianship devolves upon the other. (G. S. 1941 Supp. 59-1802.) Had the appointment of appellant as guardian been valid, appellee would not have been deprived of the custody of her child by virtue of such appointment where appellee's fitness was not made an issue and determined against her in the proceedings for the appointment of appellant as guardian. (*In re Brown*, 98 Kan. 663, 159 Pac. 504; *Melroy v. Keiser*, 123 Kan. 513, 255 Pac. 978; *Jagger v. Rader*, 134 Kan. 570, 7 P. 2d 114.) See, also, *Jones v. Jones*, 155 Kan. 213, 219, 124 P. 2d 457. In the Brown case it was held:

"The right of a mother to the custody of her child is not impaired by an order of the probate court appointing a guardian, notwithstanding a recital therein that the guardianship extends to the person as well as the property, where no issue concerning the mother's fitness in that regard was actually presented or determined in the proceeding in which such appointment was made." (Syl. ¶ 1.)

The principle enunciated in the Brown case was followed and applied in the Melroy case, *supra*, a proceeding in habeas corpus between the father of his child and a duly and legally appointed guardian. In the Melroy case it was said:

"The child's father, never having legally surrendered his right to the custody of the child, by consenting to its adoption or otherwise, is entitled to the custody of his own child. This is so well settled in the law that no authorities are needed to support it. . . .

"The order of the probate court appointing respondent guardian of the person of the child, without the consent of the child's father, and where no issue concerning the father's fitness was presented or determined in the proceedings in which such appointment was made, is not binding on the father. (*In re Brown,* 98 Kan. 663, 159 Pac. 405.)" (p. 514.)

G. S. 1941 Supp. 59-2257 (6) expressly requires the petition for appointment of a guardian to state the reasons for the guardianship. No charge of appellee's unfitness was contained in the petition for appellant's appointment and the order of appointment contains no finding as to the reason for her appointment.

Touching appellant's contention with respect to the exclusive jurisdiction of probate courts under the new probate code, our attention is directed to opinions in *Starke v. Starke,* 155 Kan. 331, 125 P. 2d 738; and *Dixon v. Fluker,* 155 Kan. 399, 125 P. 2d 364. Those cases are not proceedings in habeas corpus and are not controlling here.

The code of civil procedure provides the right to test the legality of restraints and we know of no provision in the new probate code which was intended to disturb that particular provision of the civil code by limiting its exercise solely and exclusively to probate courts. G. S. 1935, 60-2201, provides:

"Every person restrained of his liberty under *any pretense whatever* may prosecute a writ of habeas corpus to inquire into the cause of the restraint, and shall be delivered therefrom when illegal." (Emphasis supplied.)

Obviously appellee, as the natural and statutory guardian of her child, had the right to test the legality of the restraint exercised over her child and the district court had jurisdiction in this proceeding to determine that issue.

Appellant's second contention is the evidence in the instant proceeding in habeas corpus disclosed appellee was not a proper person to be awarded the custody of her child. The trial court expressly found to the contrary. If that question were reviewable, we might encounter considerable difficulty in saying there was no evidence to support the finding of the trial court. That particularly would be true in view of the testimony of appellee's husband concerning appellee's conduct and behavior since their marriage. No motion, however, was made to set aside the finding of the court

and no motion was filed for a new trial in which the merits of that finding were challenged. A new trial is a reëxamination in the same court of an issue of fact. (G. S. 1935, 60-3001.) In the absence of a motion for a new trial there can be no reëxamination of issues of fact. (*Union Nat'l Bank v. Fruits,* 124 Kan. 440, 260 Pac. 638.) In view of the circumstances we cannot disturb the finding. The judgment is affirmed.