No. 36,777

Marie Schott Loucka, *Petitioner*, v. The State Department of Social Welfare, etc., Guido Schott and Dorothy Schott, *Respondents.*

(179 P. 2d 791)

Opinion filed April 22, 1947.

*Leroy E. Harris,* of Lawrence, argued the cause and was on the brief for the petitioner.

*Marvin E. Larson,* of Topeka, argued the cause, and *Charles F. McCoy,* of Topeka, was with him on the briefs for respondent, State Department of Social Welfare; *Charles Springer,* of Lawrence, argued the cause and was on the briefs for respondents Guido and Dorothy Schott.

The opinion of the court was delivered by

BURCH, J.: This original proceeding for a writ of habeas corpus presents the pitiful plea of a young mother who has lost her little daughter by the process of the law. The story of the legal interference with providential preference follows.

When the petitioner was only a little more than a child herself she pleaded guilty to a misdemeanor before a justice of the peace and was committed to the Kansas Industrial Farm for Women. At the time she entered the institution there existed in expectation the child involved in this action. The father of the child is shown to have been a soldier but is unnamed and unknown to this court. Near the close of the period of her pregnancy the petitioner was sent to a hospital wherein she became a mother on October 2, 1942. Ten days later, while the petitioner was still convalescent and weary from having carried successfully the burden of her baby "through the valley of the shadow of death," a representative of the Kansas Industrial Farm for Women filed in the juvenile court of Leavenworth county, Kansas, an application requesting that the petitioner's infant daughter be placed in the State Home for Orphans. On the same day, and without notifying the petitioner in any manner of the pendency of the action, the juvenile court found the daughter was a dependent and neglected child and ordered the probation officer to place the child in the State Home for Orphans. On the same day the petitioner, Marie Schott (Loucka) was released from the Kansas Industrial Farm. We are not informed whether she was released before or after the hearing in the juvenile court but the record shows that she did not appear at the hearing either in person or by counsel. Five days later the petitioner's daughter, Donna May Schott, was admitted to the State Home for Orphans at Atchison, Kan.

The State Home for Orphans apparently kept Donna May in its custody for about seven months, and on May 7, 1943, caused or permitted the child to be placed in the home of Guido Schott and his wife, Dorothy Schott, who ever since have had the actual custody of the little girl. Guido Schott is a brother of the petitioner, and

he and his wife have given Donna May tender and proper care. As a consequence, Donna May has manifested much affection for them and they, in turn, love her so much that losing her will bring a dreadful hurt to their hearts. They assert in their pleadings that they are eager and able to care for Donna May and provide her with the necessities of life. No one, including the members of this court, questions in this proceeding the fitness and fineness of the respondents, Guido and Dorothy Schott. But a mother's love also is involved and consequently, we must consider her conduct since she lost the companionship and custody of her little baby.

The mother, who is the petitioner, has married and she and her husband have a home of their own. The respondents do not now and never have asserted that the petitioner is not a fit and proper person to have the custody of her child. Moreover, no court in the varied course of legal entanglements which have occurred has ever found adversely to her on such an issue or, specifically, that it will be for the best interests of the child to have it placed in the custody of some one other than the mother nature named. For the past three years she has been seeking to obtain actual and legal possession of Donna May by recourse in the courts. In 1944 she filed a petition for a writ of habeas corpus in the district court of Douglas county. That action was dismissed upon the conclusion that such court did not have jurisdiction. Thereafter she filed in the juvenile court of Leavenworth county a motion to set aside the original order granting custody of the child to the State Home for Orphans. The motion was denied and the petitioner appealed to the district court of Leavenworth county. On February 27, 1946, the appeal was dismissed also upon the conclusion that such court did not have jurisdiction. Thereafter on July 23, 1946, the respondents, Guido and Dorothy Schott, obtained an interlocutory decree of adoption from the probate court of Douglas county. On September 26, 1946, the petitioner filed her original petition for habeas corpus in this court. On December 21, 1946, she filed a supplemental petition for such a writ and a motion requesting that the respondents, Guido and Dorothy Schott, be made parties and that the action they had brought for the adoption of Donna May Schott in the probate court of Douglas county be stayed until the further order of this court. We sustained the motion as of January 3, 1947. Since such date the respondents have filed their respective answers herein and counsel for the parties have filed abstracts and briefs and orally argued the

case. Because of the absence of appeal to this court from any of the rulings made by other courts we are concerned only with the effect such rulings possibly may have upon the present action which originated in this court.

Counsel for the petitioner contends that the original order made by the juvenile court placing Donna May in the custody of the State Home for Orphans was void because no notice was given to the mother as required by G. S. 1935, 38-405. Counsel for the respondents concede that the order originally made was void for the reason given but assert that the juvenile court later acquired jurisdiction when the petitioner filed in the same court a motion to set aside the original order, which motion contained both jurisdictional and nonjurisdictional grounds. In support of such reasoning counsel for the respondents cite *Barnett v. Insurance Co.,* 78 Kan. 630, 97 Pac. 962; *Schultz v. Stiner,* 97 Kan. 555, 155 Pac. 1073; *Matthies v. Union Products Co.,* 138 Kan. 764, 28 P. 2d 754; and *Olsen v. Lambert,* 158 Kan. 94, 145 P. 2d 159. In addition respondents' counsel assert that since no appeal was taken from the order of the district court of Leavenworth county dismissing the appeal from the ruling denying the petitioner's motion which was filed in the juvenile court, that therefore the order of the juvenile court became final and that it cannot be set aside in a habeas corpus proceeding because to do so would constitute a collateral attack upon a final judgment of custody in violation of G. S. 1935, 60-2213, *Second.* They cite, also, to such effect *LeShure v. Zumwalt,* 151 Kan. 737, 100 P. 2d 643.

Can it be correct that this court cannot consider in an original habeas corpus case the future welfare of a child because some other court, years ago, placed the child in the custody of a designated party? If such be true, then courts having jurisdiction in habeas corpus cases cannot be concerned with what may be for the best interests of a child. We think that courts having jurisdiction are not powerless to act in furtherance of the interests of a child. Apparently no court heretofore has given much consideration to the child involved in this action. We note that nowhere in the legal labyrinth presented in the instant case has any court seen fit to appoint a guardian *ad litem* for the baby. The question before us does not turn upon whether the juvenile court ever had jurisdiction. Surely no one can now seriously assert that Donna May is still a dependent and neglected child. Two homes await and want her. In either of them she will be given adequate and affectionate care.

Such being true, the only question which need concern us is: Which home should have Donna May? In the case of *In re James Shephard*, 67 Kan. 870, 74 Pac. 1133, we bluntly held:

"The modified decree of the district court changing the custody of the two minor children from the mother, Maude Gibson, to the petitioner, their father, is not binding on this court. The welfare of the children is still open to consideration. (*In re King*, 66 Kan. 695, 72 Pac. 263.)"

In *Foundling Hospital v. Harrington*, 113 Kan. 521, 215 Pac. 303, we held as follows:

"The jurisdiction of this court is questioned. It is contended that this court does not have power in a habeas corpus proceeding to take the child from the custody of one to whom that custody has been awarded by the juvenile court. Habeas corpus, from the organization of this state to the present time, has been used as a means to determine the fitness of those who have the custody of children, and under that writ children have often been taken from the custody of one person and placed in the custody of another. The respondent, under the order of the juvenile court, does not have any greater right to the custody of the child than a parent would have to the custody of his child. Where the best interests of a child will be promoted, its custody may be taken from a parent and given to a stranger. (*Chapsky v. Wood*, 26 Kan. 650; *In re Guber*, 105 Kan. 515, 184 Pac. 850.) The jurisdiction of the juvenile court is not exclusive. The supreme court may, on habeas corpus, take an infant away from one to whom the custody of the infant has been given by the juvenile court and give that custody to another." (p. 523.)

Later in the opinion appears the following:

"Juvenile courts are not given jurisdiction to determine the rights of contending parties to the custody of children. The jurisdiction of those courts is over dependent, neglected, and delinquent children. (Gen. Stat. 1915, § 3065, as amended by Laws of 1917, ch. 154.) Those courts are given control over such children although there may be no contest concerning their custody. In a proceeding in habeas corpus, any court having jurisdiction may adjudicate the rights of those contending for the custody of a dependent, neglected, or delinquent child, but jurisdiction then depends on the controversy over custody and not on the fact that the child is dependent, neglected, or delinquent." (p. 524.)

In the case of *Johnson v. Best*, 156 Kan. 668, 135 P. 2d 896, wherein a guardian had been appointed for the person of a child, we held:

"Had the appointment of appellant as guardian been valid, appellee would not have been deprived of the custody of her child by virtue of such appointment where appellee's fitness was not made an issue and determined against her in the proceedings for the appointment of appellant as guardian. (*In re Brown*, 98 Kan. 663, 159 Pac. 504; *Melroy v. Keiser*, 123 Kan. 513, 255 Pac. 978; *Jagger v. Rader*, 134 Kan. 570, 7 P. 2d 114.)" (p. 671.)

We have carefully examined the findings of the juvenile court made in connection with the original custody order entered as of October 12, 1942, and the journal entry filed as of June 14, 1945, covering the ruling on the motion to set aside the original order and cannot find therein any statement indicating in any manner that the petitioner was not a fit person to have custody of her child. The only inference in the record to such effect is the fact that an early indiscretion on the petitioner's part resulted in her being sent to the Kansas Industrial Farm for Women. Even if the petitioner's legal rights have been impaired by reason of her counsel's legal conduct in prior proceedings, this court can and should consider the welfare of her child in a habeas corpus proceeding. From the opinion by Mr. Chief Justice Harvey in the recent case of *Paronto v. Armstrong*, 161 Kan. 720, 171 P. 2d 299, the following is quoted:

". . . the use of habeas corpus has been broadened to include an inquiry as to the custody of minor children by a court having equity jurisdiction where two or more parties or groups of parties contend for such custody. See 39 C. J. S. 568 *et seq.*, 29 C. J. 108 *et seq.*, 25 Am. Jur. 202 *et seq.*, and cases cited. In such use of habeas corpus, the legal rights of the contending parties are of no consequence or at most are of but little consequence. The primary and controlling question in such a case always is the present and future welfare of the child. Legal questions presented are considered only as they bear, if at all, upon the question of what disposition of the child is for the child's best interest and this is determined by the court upon all the facts and circumstances disclosed by the evidence. See *Jones v. Jones*, 155 Kan. 213, 124 P. 2d 457, and cases cited on page 219." (p. 724.)

By reason of the foregoing, the only question which remains is: What should be done in furtherance of the present and future welfare of the child? We must decide whether she should be allowed to live longer with her uncle and aunt or placed in the custody of her natural mother. Donna May is now about four and one-half years old. Insofar as the record discloses, the conduct of her mother since she was released from the Kansas Industrial Farm for Women has not been improper. As hereinbefore stated, no one now contends that the mother is not a fit person to have custody of her little girl. We cannot hold, as a matter of law, that a mistake the mother made more than five years ago eternally condemns her as an improper person to have custody of her own children. In the absence of any further contention as to the mother's qualifications, the answer to the primary question must be found by considering not only the present but the future welfare of the child, as set forth in

the last-cited case. If we leave her with her uncle and aunt, the hour must come when she must face the bewildering realization that the courts have decreed she cannot live with her own mother. Neither she nor her mother deserves such an agonizing penalty. A child rightfully asks, why? And candid explanation in this case probably would cast a needless dark, depressing shadow over the child's entire life. We think and hope that Donna May will be happier and live a more normal life if she is spared such a deleterious revelation. As a result of the conclusion we have reached we need not prolong this opinion by giving reported consideration to the well-recognized rule that courts ordinarily prefer that proper parents be given possession and control of their progeny even though such a rule may be applicable and controlling in this case.

The State Department of Social Welfare is named as a party respondent in the present case because of its supervision of the State Home for Orphans. Such department now disclaims any interest in the custody or guardianship of Donna May and seeks to avoid costs. Upon such assurance the writ is denied as to the State Department of Social Welfare and is allowed as to the respondents, Guido and Dorothy Schott. The last-named respondents are directed to deliver forthwith the person of Donna May Schott to the petitioner, and to dismiss the action pending in the probate court of Douglas county, Kansas, in which they seek to obtain a final order of adoption of Donna May Schott.

THIELE, J., concurs in the result.

HOCH, J., not participating.