No. 41,321

In the Matter of the Application of JOHN and ILENE BOLINDER for a Writ of Habeas Corpus. JOHN and ILENE BOLINDER, *Appellees,* v. ELVIN and WAUNETA BORKERT, *Appellants.*

(341 P. 2d 1033)

Opinion filed July 10, 1959.

*David H. Heilman,* of Council Grove, argued the cause and was on the briefs for the appellants.

*Marlin Brown,* of Council Grove, argued the cause, and *Constance L. Brown,* of Council Grove, was with him on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J: This was a proceeding in habeas corpus to determine the care and custody of Kenneth Roy Weeks, a minor child.

Kenneth was born on February 2, 1955. His parents were Leonard and Mary Margaret Weeks. Leonard died on August 2, 1955, while serving with the armed forces in Korea.

At this point the identity and relationship of the various parties to this action should be stated.

Oral C. Weeks is the father of Leonard, being the paternal grandfather of Kenneth.

Wauneta Borkert is the sister of Oral C. Weeks, being the great-aunt of Kenneth.

Margaret Main is the mother of Mary Margaret Weeks, being the maternal grandmother of Kenneth.

Ilene Bolinder is the half sister of Leonard, being the paternal aunt of Kenneth.

After Leonard's death Mary Margaret and Kenneth lived in the home of her mother, Margaret Main, in Herington. In November, 1955, she and Kenneth moved to an apartment of their own in the

same city. Her conduct and neglect of Kenneth were such as to bring about an investigation by the authorities. The grandmother, Margaret Main, thereupon took charge of the child and removed him to her home. He remained there until about Christmas, at which time, due to a business transfer of Margaret Main's second husband, he was placed in the care of Wauneta Borkert, his great-aunt, in Council Grove.

On December 29, 1955, Oral C. Weeks filed a petition in the probate court of Morris county alleging that Mary Margaret had abandoned Kenneth, and requesting that he and his second wife be appointed as guardians of the child. At the hearing thereon Oral C. Weeks was found to be a proper person to be appointed guardian of the person and estate of Kenneth, and it was ordered that letters of guardianship be issued to him upon his taking the oath and giving bond in the amount of $1,000. For some reason or other, not clearly shown by the record, Oral C. Weeks did not qualify as guardian and letters of guardianship were not issued to him.

At or about this time Oral C. Weeks removed Kenneth from the Borkert home and took him into his own home where he remained for about sixty days until he was returned to the Borkert home by the sheriff. The basis of this action is not clearly shown.

On October 4, 1956, Ilene Bolinder, the paternal aunt of Kenneth, joined by her husband, John, commenced this action in the district court of Morris county, the respondents being Wauneta Borkert and her husband, Elvin, and Oral C. Weeks and his second wife, Catherine. Their petition set out some of the facts of the "shifting and scrambled" custody of Kenneth, as heretofore briefly related, and alleged that the mother, Mary Margaret, had abandoned him. The grandmother, Margaret Main, and her second husband, were later made parties respondent.

On October 15, 1956, eleven days after this action was filed, the probate court of Morris county made an order appointing one Floyd Smith, not related to any of the parties, as guardian of the person and estate of Kenneth. This "order" was made without petition or notice to anyone and without vacating the former order appointing Oral C. Weeks.

After a number of hearings in this case at which all parties were present in court in person and by counsel, and after hearing the testimony of numerous witnesses, the trial court found that the

welfare of Kenneth would best be promoted by giving his care and custody to the petitioners Bolinder, who reside on and operate a large farm a short distance from Alta Vista in Wabaunsee county. In rendering judgment the court made thirty-two findings of fact setting out in minute detail the facts and circumstances in connection with all contending parties.

The respondents Borkert have appealed and assign four specifications of error. Each will be discussed briefly.

The first is that the court erred in holding that it had jurisdiction, and with respect to this the Borkerts contend that as the probate court assumed jurisdiction of the child in the guardianship proceeding filed by Oral C. Weeks that court continued to retain jurisdiction of the child to the exclusion of the district court.

There are at least two good reasons why this contention cannot be sustained. In the first place, no letters of guardianship were issued to Oral C. Weeks, petitioner in that proceeding, or to anyone else. The subsequent *ex parte* action of the probate court in "appointing" Floyd Smith was of no consequence insofar as this habeas corpus action was concerned. Secondly, assuming that prior valid guardianship proceedings had been had in the probate court, in *Johnson v. Best,* 156 Kan. 668, 135 P. 2d 896, it was held:

"A proceeding in habeas corpus, instituted by a mother to recover custody of her minor child from one having been appointed guardian thereof, is not an action to remove a guardian, within contemplation of the provisions of the probate code, but is a proceeding, authorized by the civil code, to test the legality of the restraint of the child's liberty, over which proceeding a district court has jurisdiction." (Syl. 3.)

and said

"The code of civil procedure provides the right to test the legality of restraints and we know of no provision in the new probate code which was intended to disturb that particular provision of the civil code by limiting its exercise solely and exclusively to probate courts." (p. 672.)

See also *Loucka v. State Department of Social Welfare,* 163 Kan. 1, 179 P. 2d 791.

In connection with this specification, complaint also is made of the fact no "service" was had on the minor and that no guardian *ad litem* was appointed for him. While it would have been entirely proper for the court to have appointed a guardian *ad litem*—its failure to do so, under the facts and circumstances, was not erroneous. The child was in court, together with all parties to the

action, except the mother, whose whereabouts were unknown and upon whom publication service was had. *Heilman v. Heilman*, 181 Kan. 467, 312 P. 2d 622, although not a habeas corpus proceeding, was a custody action. In the course of the opinion it was said:

"We first discuss the failure of the trial court to appoint a guardian *ad litem* to represent the minor child at the custody hearing. The only authorities relied upon in support of the grandmother's contention are our statute, G. S. 1949, 60-408, an excerpt from 27 Am. Jur., Infants, § 140, p. 859, and the case of *Pierson v. Brenneman*, 171 Kan. 11, 229 P. 2d 1019, none of which is in point or has any bearing on the matter. The mentioned statute and the case clearly apply only to questions relating to service of process on minors as litigants, and the same is true of the textbook citation.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Here the minor child, although being the 'subject' of the litigation, was not a party litigant. He was present in court, as were his mother and grandmother to whom a divided custody order previously had been granted. Perhaps in a given case, and under peculiar and unusual circumstances, it would be proper to appoint a guardian *ad litem* to represent a minor child at a custody hearing, but there is nothing in the case before us to indicate the court erred in not following such procedure. The grandmother's contention as to this matter is entirely lacking in merit and cannot be sustained." (pp. 470, 471.)

The fourth specification of error is that the court erred in permitting the amendment of the records and changing the order of the court after the term had expired.

As heretofore stated, service by publication was had on the child's mother. It was regular in every respect and in conformity with the statute. The publisher of the newspaper filed the proof of publication and swore to it before the clerk of the district court (G. S. 1949, 60-2528). That official, however, at the time, neglected to place her name and seal upon the document. It appears the court quite properly refused to sign the journal entry of judgment awarding custody until the clerk completed the jurat, which was done at a subsequent term. Assuming the Borkerts are in position to raise the question, no error can be predicated on this procedure. Valid publication service was had, no one was prejudiced by the "irregularity" on the part of the clerk, and this contention is completely lacking in merit.

The second and third specifications of error are that the court erred in overruling the demurrer to petitioners' evidence and in overruling the motion for a new trial.

In connection with the first-mentioned ruling, it is contended

petitioners' evidence failed to establish anything reflecting adversely on the Borkerts—therefore nothing was shown to justify a change of custody. Concerning the denial of the motion for a new trial, the Borkerts again urge matters covered by the other specifications of error.

It has been held that the use of habeas corpus has been broadened to include an inquiry as to the custody of minor children by a court having equity jurisdiction where two or more parties, or groups of parties, contend for such custody; that in such use of habeas corpus the legal rights of the contending parties are of no consequence or, at most, are of but little consequence; that the primary and controlling question in such a case always is the present and future welfare of the child; that legal questions presented are considered only as they bear, if at all, upon the question of what disposition of the child is for the child's best interest, and that this is to be determined by the court upon all of the facts and circumstances disclosed by the evidence. (*Paronto v. Armstrong,* 161 Kan. 720, 724, 171 P. 2d 299.)

And that is precisely what confronted the trial court in this case. It is conceded by all parties that the child had been abandoned by its mother, and the court had before it the claims of the various relatives, all of whom apparently were sincere in their interest in the child. It would serve no useful purpose to detail the evidence concerning the ages of the contending parties, their homes, station in life, their economic status, or numerous other matters—all of which were considered by the court in arriving at a decision as to what appeared to be for the child's best interest and welfare, present and future. We have studied the record and are convinced the trial court's decision was reached only after a most painstaking and conscientious consideration of all of the many factors involved. The findings are supported by the evidence and nothing has been shown to justify this court's interference with the judgment rendered.

The judgment is affirmed.