No. 46,316

DOROTHY LEONE HAMM (Now Moser), *Appellant,* v. NORMAN DALE HAMM, *Defendant,* JACK RAYMOND KELSEY and BARBARA KELSEY, *Respondents—Appellees.*

(485 P. 2d 221)

Opinion filed May 15, 1971.

*James R. Schmitt,* of Wettig, Schmitt and Caro, of Wichita, argued the cause and was on the brief for the appellant.

*Mearle D. Mason,* of Hill, Mason, Graber and Nicklin, of Wichita, argued the cause and was on the brief for the respondents—appellees.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a judgment in a child custody proceeding. The natural mother was denied custody of her two small children and she has appealed.

The facts are not in dispute. As the appeal challenges the finding of unfitness of the mother, the facts must be presented in some detail.

In 1965, appellant filed a divorce action against her husband and was granted temporary custody of her four minor children, Wanda, Zina, Cindy May and Kristen Ray, whose ages at the time ranged from two months to five years. Receiving no financial assistance from their father, appellant was unable to provide for her children and in the fall of 1965, she agreed to allow the two oldest girls, Wanda and Zina, to stay in the home of their paternal grandparents and the youngest boy and girl, Kristen Ray and Cindy May, to stay in the home of their father's aunt and uncle, appellees herein. Both the grandparents and the appellees live in the same neighborhood in Arkansas City, Kansas. In June, 1966, this temporary arrangement was reduced to writing and approved by the court, and in the same year a final decree of divorce was granted to appellant.

Subsequently, appellant met Rudy Moser who was a resident of

Las Vegas, Nevada, and an employee of Trans World Airlines. In February, 1967, they were married. Approximately three months after appellant was remarried she filed a motion in the district court of Sedgwick County, Kansas, seeking to regain custody of her two oldest daughters from the paternal grandparents. On June 7, 1968, the judge of the district court of Sedgwick County, Kansas, granted permanent custody of the two older daughters to appellant. They have resided with her and Mr. Moser since that time. Parental rights of the natural father were judicially severed by a Nevada court in 1969, and his whereabouts are unknown.

In August, 1970, in an effort to reunite her family, appellant filed a motion before the same judge requesting that she be granted custody of the two younger children, Kristen Ray and Cindy May. The judge ordered a juvenile court investigation of the home of appellant be made, and on September 23, 1970, the report was filed. The report of the juvenile court of Clark County, Nevada, found that appellant and her husband own a three-bedroom home in a well developed and respected housing area in Las Vegas, Nevada, that they are essentially without debts, except on their home, and have an income of slightly more than $1,000 per month. The two oldest girls, Wanda and Zina, were found to be in good health, with fine school records, and were attending church regularly. The report noted that appellant and husband do not drink or go out frequently, but rather enjoy family entertainment such as bowling, croquet and vegetable gardening in their back yard. The report concluded by stating that appellant's home atmosphere was very good and that all persons contacted by the investigator gave a high appraisal of the Mosers.

On October 2, 1970, following the juvenile investigation, a hearing was held on the appellant's motion for change of custody.

The appellant testified that during the past two and one-half years since she was granted custody of her two oldest children, their home life has been good. She exhibited the children's school and church records and told about the family home and activities. She further testified that it was her husband's desire to adopt her children but that they were waiting until all four children could be adopted at one time. Concerning the two younger children, she explained that she had always remembered the children with gifts on their birthdays and Christmas and had journeyed from Las Vegas to Kansas some fifteen times to visit them in the past

three and one-half years. On these visits the older girls have gone with her and were always upset because their younger brother and sister could not go home with them. All four of the children have known and played with each other most of their lives having lived in the same neighborhood in Arkansas City, Kansas.

Frank Wadsworth, one of the owners of the Las Vegas Transfer and Storage Company and a resident of Las Vegas for more than 35 years, testified that appellant had been a responsible and efficient employee for the past three and one-half years. Mildred Carlson, a resident of Las Vegas, Nevada, for more than 24 years and a fellow employee of appellant, also testified in her behalf. Both witnesses stated that they had observed Mrs. Moser both on and off the job and on a number of occasions when she was with her older children. Each observed that the children were happy, well dressed and well taken care of, and each characterized appellant's work habits and personal habits as good. Mrs. Carlson stated that based upon her observation of the youngsters and the home setting, she believed that the adjustment of the two older girls to their new home had been perfectly normal.

Appellant's husband, Rudy Moser, testified that his relationship with appellant's children was good and that he has supported the two older children since his wife had regained custody of them. He stated that he would welcome the two younger children into his home and support them, and that he intended to adopt all four of the children as his own.

The appellees presented the testimony of one witness, that of appellee, Barbara Kelsey. She testified that she and her husband have had custody of the two children in question since October, 1965, except for a period of three months in early 1966, and that the children have resided with them and their own two children since that time. Mrs. Kelsey was asked by her attorney if adjustment for the children would be hard if the court changed custody. She replied that adjustment for the youngest child, in her opinion, would be harder because he is "sensitive" but stated that he was a "very healthy" boy. Concerning the girl, she felt that she would have no trouble adjusting to the change of custody. The children were enrolled in school under the name of Kelsey but that they knew their real name was Hamm. No attempt had ever been made to conceal the identity of the children's real mother, and Mrs. Kelsey told them on occasion that Mrs. Moser had "brought them

into the world." She admitted that she had called appellant since the filing of appellant's motion to change custody and offered the girl to her in exchange for appellant's allowing the boy to stay with the appellees.

At the close of the evidence, the court took the matter under advisement and on October 13, 1970, it entered an order which concluded:

"It is the opinion of this court that plaintiff cannot be permitted to grant the complete care, support, responsibility and financial responsibility of raising these two very young babies to another and then at her will and desire take these children without cause. It is the further opinion of this court that these children cannot be uprooted from their home and 'parents' and transplanted into a totally strange situation without causing them irreparable harm and damage. It is this court's opinion that in situations such as is here presented, the future health and welfare of the children involved is paramount and not the desires and rights of adults.

"After hearing the testimony of plaintiff, Mrs. Jack Raymond Kelsey, and other witnesses, after observing the parties to this matter, and after much consideration, this court finds that plaintiff is an unfit person to have the future care, custody and control of Kristen Ray Hamm and Cindy May Hamm. It is my opinion that plaintiff is not a suitable, proper or correct person under all the circumstances to have the future care and custody of these children. To take these children from their present home and those they consider their parents and place them with persons who to them are practical[ly] strangers would be an unconscionable exercise of judicial discretion."

The trial court granted permanent custody of the two children to the appellees.

The appellant contends that there was no substantial evidence to support the finding that she was an unfit person and the trial court abused its discretion in denying appellant's motion for change of custody.

We are forced to agree. There was no evidence of any character that indicated the mother was an unfit person to have possession of her children. In fact, the evidence before the trial court, which we have previously summarized, would indicate that the mother was maintaining a fine Christian home in which to raise her children and that she had a motherly desire to have her four children in the home together.

The right of the parent to the custody of the children under such circumstances has been announced in numerous decisions. In *Stout v. Stout,* 166 Kan. 459, 201 P. 2d 637, we stated at page 463 of the opinion:

". . . Under our recent and often repeated decisions, to which we have

strictly adhered for many years, the established and inviolate rule has been and now is that a parent who is able to care for his children and desires to do so, and who has not been found to be an unfit person to have their custody, in an action or proceeding where that question is in issue, is entitled to the custody of his children as against grandparents or others who have no permanent or legal right to their custody, even though at the time the natural parent seeks their custody such grandparents or others are giving the children proper and suitable care and have acquired an attachment for them (See *Jones v. Jones*, 155 Kan. 213, 219, 124 P. 2d 457; *May v. May*, 162 Kan. 425, 176 P. 2d 533; *In re Jackson*, 164 Kan. 391, 190 P. 2d 426; *Bailey v. Bailey*, 164 Kan. 653, 192 P. 2d 190, citing numerous other and early decisions to the same effect)."

The opinion in the *Stout* case was quoted with approval in *Ramey v. Ramey*, 170 Kan. 1, 223 P. 2d 695. See, also, *Christlieb v. Christlieb*, 179 Kan. 408, 295 P. 2d 658.

Where a contest for child custody is between a mother and a third party, in the absence of evidence that the mother is an unfit person to have custody, she is entitled to custody as against the third party. (*Finney v. Finney*, 201 Kan. 263, 440 P. 2d 608.)

The trial judge no doubt placed great weight on his conclusion—

"It is the opinion of this court that plaintiff cannot be permitted to grant the complete care, support, responsibility and financial responsibility of raising these two very young babies to another and then at her will and desire take these children without cause. . . ."

The appellees' only contention is that the failure of the mother to support the two children is sufficient grounds to sever all parental relationship.

The above conclusion of the court is not a proper statement of the law.

A child is not a chattel subject to an absolute gift or contract. A parent cannot by merely giving away a child be released of the obligation to support it or be deprived of the right to its custody. The question was definitely decided in *Wood v. Shaw*, 92 Kan. 70, 139 Pac. 1165. There the father had delivered a son two years old, and a baby girl, four days old, to the custody of their grandparents, the parents of the children's mother. By a written contract the father agreed they might remain with their grandparents for fourteen years. Four years later he remarried and endeavored several times to secure the children from their grandparents but was not successful. He brought habeas corpus to get their custody. There had been some trouble between the father and the grandparents

and on one occasion he had gained possession of the children by a ruse. This was all pointed out in the opinion. We said:

"The agreement referred to is not controlling, because the custody of the children is not a matter to be determined by contract. (*Chapsky v. Wood,* 26 Kan. 650; Notes, 27 L. R. A. 56, 41 L. R. A., n. s., 578, 42 L. R. A., n. s. 1013.) There is no substantial controversy as to the important facts of the case. The court is of the opinion that there is nothing in the circumstances of the case to overcome the natural claim of the father to the custody of his children, inasmuch as his right is not subject to be contracted away, and has not been forfeited by any misconduct; that the present arrangement affords no such superior advantage to the children as to offset this consideration, especially in view of the fact that after seven years more they were in any event to be returned to him. . . ." (p. 72. See, also, *In re Jackson,* 164 Kan. 391, 190 P. 2d 426, where the matter is discussed at some length.)

We are forced to conclude that there being no evidence of unfitness on the part of the mother the trial court abused its discretion in denying her motion for change of custody.

The judgment is reversed with instructions to the trial court to enter an order granting the permanent custody of the two children, Cindy May Hamm and Kristen Ray Hamm, to their natural mother, Dorothy Leone Moser.

APPROVED BY THE COURT.