No. 46,265

In the Matter of the Application of Shirley Rhea for a Writ of Habeas Corpus (SHIRLEY RHEA, *Appellant*, v. MARY ANN VINER, formerly MARY ANN EASTWOOD, *Appellee*).

(485 P. 2d 1382)

Opinion filed June 12, 1971.

*Thomas E. Joyce*, of Kansas City, argued the cause, and *Mary Jane Joyce*, of Shawnee Mission, was with him on the briefs for the appellant.

*J. R. Russell*, of Kansas City, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: In this habeas corpus action the natural mother and her sister are contesting over the custody of a young child. The maternal aunt prevailed in the trial court and the mother has appealed.

For our purposes the facts are not in controversy and may be briefly summarized.

The child in question, Stephanie Lynn Mask, was born December 15, 1967. At that time the child's natural mother, Shirley Rhea, appellant herein, was married to Deal Rhea, Jr. Appellant and Rhea had separated in June, 1966. Thereafter they had a brief reconciliation, cohabiting for three days in March, 1967, during which interval appellant became pregnant with Stephanie Lynn. At the conclusion of this three day period appellant's husband left her and she has not seen him since. They have never been divorced.

When appellant was about six months pregnant she made an arrangement with her sister, whose name was then Mary Ann Mask, appellee herein, whereby appellant would seek medical services and enter the hospital for her confinement under her sister's name, the sister to assume all expense in connection with the child's birth and thereafter to have its custody as though it had always been her own child. Appellant's mother and other relatives were cognizant of this arrangement. Appellant made this agreement because she felt financially unable to bear the expense involved. Appellee had no child, was unable to have one and wanted appellant's expected child.

The foregoing arrangement was carried out. Appellant sought medical services and entered the hospital under appellee's then name; Stephanie Lynn was born; upon leaving the hospital three days thereafter appellant turned her over to appellee and, except for one week-end, appellee has had her ever since. Stephanie Lynn does not know appellant is her mother.

Appellant testified she now considers herself financially able to care for Stephanie Lynn and wants her custody. As a result of her marriage to Rhea appellant has an older daughter, April Marie, whose custody she has always had. She maintains a three room apartment for herself and April Marie, who was four years of age at the time of the hearing. Appellant has worked at the same manufacturing company for seven years. The older daughter is taken care of at a day care center while she works. She has started bank accounts and taken out insurance policies for both her daughters. She has given some clothing and also a Christmas gift to Stephanie.

Appellee, who has been married four times, testified appellant was always telling her she was going to take Stephanie back and was always trying to take Stephanie away from her; Stephanie was nervous when she returned from a week-end visit with appellant; appellant told their mother she had planned to regain Stephanie's custody ever since the day appellee took her. There was testimony appellee has been a good mother. No adoption proceedings were ever filed.

Appellant commenced this proceeding December 8, 1969.

The entire findings of fact and the judgment of the trial court are embraced in its oral statement made at the conclusion of the evidentiary hearing as follows:

"This is an unusual factual situation. Both parties agreed prior to the birth

of this child that the custody of the child when born would be vested in the Respondent, and that agreement was consummated and was abided by until December 8th of 1969, when this petition for writ of habeas corpus was filed, in which consent to custody was attempted to be changed by the Petitioner in this case.

"At the time this case was filed there was no showing that this child was not being properly taken care of; that the child was not in the possession of the one agreed to; and, therefore, I am going to order that this writ of habeas corpus be denied.

"Actually—commenting on this matter—this matter should be litigated—I can't order any party to file litigation in the Probate Court—but this matter should once and for all be determined by the Probate Court on a petition for adoption, on whatever grounds that there appears to be, and then the parties will not be living in such a state as they are now. There may or may not be grounds for adoption. That's for the Probate Court to rule on, but if I were to rule on it today, I would grant the adoption on the part of the Respondent."

Undoubtedly acting in good faith in its conception of the child's best interest, the trial court patently placed reliance on the fact the child was in the custody of its aunt agreeable to its mother's arrangement. However, such reliance was juridically misplaced. Our cases are legion that a minor child cannot be the subject of a valid gift and a parent cannot merely by giving away a child be deprived of the right to its custody (see *e. g., Wood v. Shaw,* 92 Kan. 70, 139 Pac. 1165; *In re Jackson,* 164 Kan. 391, 190 P. 2d 426). Custody of a minor child is simply not a matter to be determined by contract (*Chapsky v. Wood,* 26 Kan. 650).

Nor, despite the well-intentioned efforts and plans of appellee, can the decision of the trial court be upheld upon any other ground inasmuch as there was neither a finding nor evidence of unfitness on the part of appellant to have custody of her child. Many of our decisions on the subject of parental custody were recently collected in *Hamm v. Hamm,* 207 Kan. 431, 485 P. 2d 221, a case bearing considerable analogy factually to that at bar. Without elaboration, the rule is, where the contest for custody is between a parent and a third party, a parent who is able to care for his child and desires to do so, and who has not been found to be unfit to have such custody in a proceeding where that question is in issue, is entitled to custody as against the third party or others who have no permanent or legal right to custody (*Gardner v. Gardner,* 192 Kan. 529, 389 P. 2d 746).

Appellee sought to elicit from appellant while she was on the witness stand admissions inferring she was guilty of some moral

delinquencies but these efforts were wholly fruitless. Unfitness was never shown.

Appellee now argues there was an implicit finding of unfitness in the trial court's statement concerning adoption proceedings. We are unable so to construe the gratuitous remarks made; moreover, as indicated, there was no evidence to support such a finding. Appellee's contention of abandonment of the child, so as to constitute the requisite element of unfitness, is untenable under the circumstances related.

Appellant's undisputed evidence showed her ability suitably to care for her child as well as her fitness for such custody and upon the showing made that custody may not be denied her.

Hence the judgment is reversed and the proceedings are remanded with directions to award custody of the minor child to its natural mother, appellant herein.

APPROVED BY THE COURT.