(578 P.2d 277)

No. 49,128

CLARA E. ASLIN, *Appellant,* v. DAVID E. SEAMON and MARJORIE P. SEAMON, *Appellees.*

Opinion filed May 5, 1978.

*Henry W. Green* of Leavenworth, for the appellant.

*Patrick J. Reardon* of Leavenworth, for the appellees.

Before PARKS, P.J., ABBOTT and MEYER, JJ.

MEYER, J.: This is an appeal in an adoption proceeding which was instituted in the probate court of Leavenworth County, Kansas, on December 27, 1976, by the appellees, David and Marjorie Seamon, husband and wife. Appellees allege that the natural mother's (Clara Foster Aslin, appellant) consent was unnecessary because of her failure and refusal to assume the duties of a parent for two consecutive years next preceding the filing of this adoption petition, pursuant to K.S.A. 59-2102(3).

The trial court found that appellant placed the two minor children, Linda and Tina Foster, with appellees in November, 1973. Marjorie Seamon testified before the district court that she had cared for the children for about a month in late 1973, but had then returned them to the natural parents. Mrs. Seamon testified that the children have lived with her continuously since January, 1974. Testimony of the other witnesses began with events occurring on September 18, 1974. Therefore, appellees' continuous care of the minor children began sometime in January, 1974.

Appellant lived with William L. Thompson, the alleged father of the children, from 1972 until January, 1974. At that time, after a violent quarrel with appellant, Thompson took the children to the home of his sister, the appellee. The children remained with appellees until September 18, 1974. On that date, appellant

apparently signed a hand-written note indicating that appellees could care for the children. Appellees thereupon moved from Leavenworth, Kansas, to Missouri, and subsequently back to Leavenworth. Appellant claims she lost contact with appellees during that time.

On September 24, 1975, appellant married Darwin Aslin. The trial court found that on November 12, 1975, appellant and her husband contacted the Leavenworth county attorney's office regarding the recovery of her two children. The court also found that appellant asked appellees to return the children to her on November 12, 1975, and again on December 25, 1976; appellees refused. On December 27, 1976, appellees filed a petition for adoption of Tina and Linda Foster. Although the two children were born out of wedlock, and William Thompson had never been legally determined to be their father, he signed a consent to the adoption. Appellees alleged that appellant had failed to assume her parental duties for two years prior to the filing of the adoption petition, and that pursuant to K.S.A. 59-2102(3), the natural mother's consent to the adoption was unnecessary.

The trial court found that William Thompson was the natural father and had consented to the adoption; that the natural mother had failed to assume her parental duties for two years previous; and appellees were granted their petition for adoption of the Foster children. The trial court stated that parental obligation requires more than appellant's sporadic attempts to show concern, affection, and interest toward the children.

K.S.A. 59-2102 reads in pertinent part:

". . . Before any minor child is adopted, consent must be given to such adoption:
  (1) by the living parents of a legitimate child or
  (2) by the mother of an illegitimate child or
  (3) by one of the parents if the other has failed or refused to assume the duties of a parent for two (2) consecutive years or is incapable of giving such consent . . ."

The trial court based its decision on K.S.A. 59-2102(3) and the applicable case law. In *In re Herbst*, 217 Kan. 164, 535 P.2d 437, the natural mother had visited her child three times and had given the child one present during the relevant two-year period. The Kansas Supreme Court stated that three visits were not sufficient to evidence assumption of parental duties. In *In re Sharp*, 197 Kan. 502, 419 P.2d 812, the court held that the natural mother's

visit to her child six days before the filing of the adoption petition was insufficient to necessitate her consent to the adoption.

We think that the instant case is distinguishable from *Herbst* and *Sharp,* supra. Although appellant Aslin's contacts with her children were few, she did not approach appellees for the purpose of visiting her children; she went to *recover* her children with the idea that she would resume full parental duties from that date on.

We find that the trial court erred in ruling that the mother failed to assume duties of a parent for two years. The undisputed facts disclose that the mother was *prevented* from exercising those duties.

While we feel that the foregoing error of the trial court is sufficient in itself to require reversal of its decision, it can also be said that equitable considerations would favor the appellant as hereinafter set out.

In deciding custody as between natural parents, the weight of Kansas authority is that the best interests and welfare of the child are paramount. When the dispute is between a parent and a stranger, the parent has rights superior to all others absent a finding of unfitness. In *Gardner v. Gardner,* 192 Kan. 529, 389 P.2d 746, it was stated:

"Where the contest for child custody is between a parent and a third party, a parent who is able to care for his children and desires to do so, and who has not been found to be an unfit person to have their custody in an action or proceeding where that question is in issue, is entitled to custody as against the third party or others who have no permanent or legal right to custody. . . ." (p. 533)

Clara Aslin had never been found to be unfit, was willing and able to care for her children, and was the only person who could claim legal custody. If she had filed a petition for a writ of habeas corpus on December 25, 1976, the court would have been obligated to return the children to her. In *In re Rhea,* 207 Kan. 610, 485 P.2d 1382, the natural mother had voluntarily "given" her baby to her sister for the sister to raise as her own child. Nearly two years later (minus one week), the natural mother filed a petition for habeas corpus to regain custody. The trial court awarded custody to her sister, but the Kansas Supreme Court reversed, stating, "Our cases are legion that a minor child cannot be the subject of a valid gift and a parent cannot merely by giving away a child be deprived of the right to its custody." (*Rhea,* supra,

at 612.) The Kansas court said that despite the trial court's good faith in attempting to determine the best interests of the child, the decision of the trial court could not be upheld upon any ground, as there had not been a finding of unfitness. The natural mother's right to her child was superior to that of any other person.

A similar situation existed in *In re Eden,* 216 Kan. 784, 533 P.2d 1222. The natural father had entrusted his three children to another family when he was financially unable to provide for them. Several months later, the foster parents filed a dependency and neglect petition to enable them to sign consents for the children's medical treatment. Temporary legal custody was given to the foster parents. Twenty-one months after he had left the children with the foster parents, the natural father attempted to regain custody. The trial court denied his attempt. The Kansas Supreme Court held that because the father had never been adjudged unfit, the district court had no choice but to return the children to their father. The court also mentioned that the father's improved circumstances indicated that custody should be awarded to him. The court in *Eden* said that the "best interest of the children" test has always been used when the custody dispute is between two parents. Absent a finding of unfitness, the natural parent's right to his children must prevail.

In both *Rhea* and *Eden,* supra, the parents had left their children with others for a period of nearly two years. In both instances, the Kansas Supreme Court said that custody of the children was with the natural parent. In the instant case, as in those two cases, the parent has not been found unfit. It is not necessary to contemplate whether there was evidence to support a finding of unfitness, but we address the issue briefly.

There was no evidence that appellant ever abused or neglected her children while they lived with her. The only evidence that might support a finding of unfitness is the fact that Clara waited more than a year before she first demanded the return of the children. Relinquishing the children to the Seamons could be construed as evidence of her concern for the children's best interests. Clara was financially unable to support a family of three by herself, as was the father in *Eden,* supra. As in *Eden,* Clara's circumstances are now substantially improved. The social worker's report stated that Clara maintains a meticulous, well-ordered home; that she has been working steadily for some time;

and that her husband appears to be an intelligent, stable person. The Seamons' natural children have a long and consistent history of not completing school. Conditions are so crowded at the Seamons' home that the children have to sleep in shifts. Clara would have only two children to care for; the Seamons have to divide their attention among many.

The provision of K.S.A. 59-2102 allowing adoption without the parent's consent if the parent has failed to assume parental duties for the previous two years should not be construed as contrary to *Eden* and *Rhea*, supra. Yet, the trial court's construction of legislative law, K.S.A. 59-2102(3), violates the well-established court-made law. That could not have been the intent of the legislature in enacting K.S.A. 59-2102(3). That particular provision was probably included so that those "hard-to-locate, occasional-drop-in" parents who seemingly have little or no interest in their children, would not prevent the children's being adopted into a good, loving home. That is not the case here. Clara Aslin did not just attempt to *visit* her children; she *demanded that they be returned to her,* so that she could resume her parental duties.

On December 25, 1976, after being told for the third time that her children would not be returned to her, Clara threatened the Seamons with criminal charges of kidnapping. An attorney would know that such a charge would be unwarranted and futile, and that the proper action is habeas corpus. As a person not learned in the law, however, Clara reasonably believed that either the county attorney or the police would aid her in enforcing her legal right. Both agencies refused to take action. Her threat gave the Seamons warning that she was going to take legal action to regain her children, and the Seamons petitioned for adoption two days later.

After years of precedent favoring the natural mother's rights, custody of the children was determined by who filed legal action first. The Seamons filed first, so they won custody.

In summary, the mother did not merely *visit* her children two times; she *demanded* that they be returned to her on three occasions, all within the statutory time. Her failure to recover them through no fault of her own should not now be held against her.

While the foregoing portion of this opinion is sufficient reason to reverse the trial court's decision, there is an additional reason

why that decision must be reversed. The court below was without jurisdiction to grant the adoption. The appellees did not have the written consent of any person legally authorized to consent to the adoption (see K.S.A. 59-2102). The father of an illegitimate child does not have authority under the laws of the state of Kansas to place a child for adoption. In the absence of a judicial determination of paternity, the father of an illegitimate child is not a "parent" pursuant to K.S.A. 59-2102(3). The consent of the mother was therefore indispensable, and in the absence of the mother's consent the trial court was without jurisdiction to grant the adoption.

We are aware that the court in the adoption proceedings found that William Thompson was the natural father of the Foster children. We hold, however, that the father of illegitimate children must be adjudicated the natural father, in proper proceedings, *before* he can execute a valid consent to the adoption of those children.

The judgment of the trial court is reversed and remanded to the district court with instructions to grant immediate custody of her children to Clara Aslin.