(798 P.2d 69)
No. 64,415

In the Matter of the Marriage of ROGER CRIQUI, *Appellee*, and TERESA D. CRIQUI, *Appellant*.

Opinion filed September 14, 1990.

*Leland E. Cox*, of Topeka, for appellant.

*Stuart M. Messer*, of Glenn, Cornish, Hanson & Karns, Chartered, of Topeka, for appellee.

*Nancy E. Freund*, of Murphy & Freund, of Topeka, for Carolyn Criqui, interested party.

Before LEWIS, P.J., REES, J., and SAM K. BRUNER, District Judge, assigned.

REES, J.: Respondent Teresa D. Criqui appeals from the order of the trial court denying her motion to restore to her custody of her four minor children.

Teresa and petitioner Roger Criqui were divorced in December 1982. By agreement of the parties, Teresa was to have custody of their two children. The trial court incorporated this agreement into the divorce decree by reference, thereby awarding custody to Teresa. At the time of the divorce, Teresa was pregnant with the couple's third child, who was born in February 1983. In August 1984, Teresa gave birth to a fourth child.

Four months after the divorce was granted, Roger filed a motion for change of custody alleging Teresa's emotional and mental state had deteriorated and this required a change of custody from

Teresa to Roger. About ten days later, Roger dismissed his mo-
tion, stating the parties had mutually agreed to settle the custody
dispute without the intervention of the court.

On November 6, 1985, Teresa executed a document captioned
"Parental Consent" granting full care, custody, and control of her
four minor children to Carolyn G. and Brenda S. Criqui, sisters
of Roger Criqui, "until the final signed documents arrive from
the Court of Shawnee County, Topeka, Kansas." In this docu-
ment, Teresa stated she did this with full knowledge of the con-
sequences and with the realization it was in the best interests of
the children. The document, which had been drafted by her
attorney at that time, was acknowledged by a notary public.
Apparently, Carolyn Criqui has had actual physical custody of
the minor children since that time.

On December 19, 1985, the trial court entered an "Agreed
Order Changing Custody" which had been prepared by Teresa's
attorney. The order stated that, due to financial problems, the
ability of Teresa to raise the children, and other related problems,
it was in the best interests of the children that custody be trans-
ferred to Carolyn and Brenda Criqui. The order then awarded
custody of the minor children to Carolyn and Brenda. At the
bottom of the order is a notarized "Verification" by Teresa in
which she states the Agreed Order Changing Custody is true and
correct and in the best interests of the minor children. Roger
executed a similar "Verification," which is attached to the order.

On February 13, 1989, Teresa filed a motion to restore to her
custody of her minor children. After a hearing, the trial court
denied her motion, finding that an abrupt change in the custody
of the minor children at that time would be harmful to the
children. In reaching its decision, the trial court found the "best
interests of the child" test was to be applied as an exception to
the "parental preference" doctrine.

Teresa contends the trial court erred in applying the best in-
terests of the child test, in not applying the parental preference
doctrine, and, therefore, in denying her motion to restore cus-
tody. She claims *Sheppard v. Sheppard*, 230 Kan. 146, 630 P.2d

1121 (1981), *cert. denied* 455 U.S. 919 (1982), is controlling and was misapplied by the trial court.

In *Sheppard*, 230 Kan. at 148, the Supreme Court noted the parental preference doctrine was succinctly stated in *Christlieb v. Christlieb*, 179 Kan. 408, 409, 295 P.2d 658 (1956), as follows:

" '[A] parent who is able to care for his children and desires to do so, and who has not been found to be an unfit person to have their custody in an action or proceeding where that question is in issue, is entitled to the custody of his children as against grandparents or others *who have no permanent or legal right to their custody*, even though at the time the natural parent seeks their custody such grandparents or others are giving the children proper and suitable care and have acquired an attachment for them.' " (Emphasis added.)

This doctrine entitles a fit parent, who is willing and able to care for his or her child, to custody of the child *as against others who have no permanent or legal right to custody*. The parental preference doctrine does not apply to the instant case. Here, Carolyn Criqui was granted legal custody after the parents executed the Agreed Order Changing Custody and the trial court entered the order granting custody to Carolyn. Thus, Carolyn has had *legal* custody of the four minor children for the past four and one-half years. This fact makes the parental preference doctrine inapplicable.

The controlling issue in *Sheppard* was the questioned constitutionality of a statute which would have allowed a court to disregard the parental preference doctrine and award custody of a child to a nonparent, upon motion and under the circumstances described in the statute, notwithstanding the fact that a parent currently had legal custody of the child. The *Sheppard* decision is a narrow decision and does not control the instant case. Here, the mother did not have legal custody of the children. Nor was Carolyn, who already had legal and physical custody of the children, seeking to divest Teresa, the natural mother, of legal custody. On the contrary, Teresa sought to take away legal custody from Carolyn. *Sheppard* may not be read as broadly as Teresa suggests. To do so would require us to misapply the holding in *Sheppard*, 230 Kan. at 154:

"What we hold here is simply this: that a parent who is not found to be unfit, has a fundamental right, protected by the Due Process Clause of the

United States Constitution, to the care, custody and control of his or her child, and that the right of such a parent to custody of the child *cannot be taken away* in favor of a third person absent a finding of unfitness on the part of the parent. We hold that K.S.A. 1980 Supp. 60-1610(b)(2), which destroys that fundamental right, is violative of the Due Process Clause and therefore unconstitutional." (Emphasis added.)

Here, there was no action or effort to take away the right of a parent to the custody of a child. Parental custody previously had been given up by the voluntary action of Teresa and Roger. Legal custody reposed with Carolyn. *Sheppard* does not control this case.

We therefore must determine the correct standard to be used by a trial court in deciding whether to take legal custody of a child from a nonparent and give it to a parent who by prior agreement relinquished that custody to the nonparent and then obtained court action, pursuant to the agreement, awarding custody to the nonparent.

In *Lewis v. Lewis*, 217 Kan. 366, 368, 537 P.2d 204 (1975), it is stated that, as between parents, "[b]efore a custody order will be modified the *movant has the burden of showing the child can be better cared for* if the requested change is granted." (Emphasis added.)

K.S.A. 1989 Supp. 60-1610(a)(3) requires a court, when making custody orders part of a divorce decree, to determine custody or residency of a child *in accordance with the best interests of the child*. That statute further provides in part:

"(A) If the parties have a written agreement concerning the custody or residency of their minor child, it is presumed that the agreement is in the best interests of the child. This presumption may be overcome and the court may make a different order if the court makes specific findings of fact stating why the agreement is not in the best interests of the child."

As to agreements by parents to transfer custody of a child to a third person, apparently without court involvement, 59 Am. Jur. 2d, Parent and Child § 30, pp. 166-67, states:

"Since children cannot be bought and sold, and since the parent is subject to obligations which he cannot throw off by any act of his own, agreements by which the parents, or one of them, transfer custody of a child to a third person, with the provision or informal understanding that custody will not be reclaimed, are not generally considered legally binding con-

tracts . . . . This is especially true in the case of a parent who, having been compelled by poverty or unfavorable circumstances to surrender the custody of his child, wishes to reclaim the child when his circumstances are improved. It seems, however, that the courts are free to enforce such agreements where to do so would be in the best interest of the child. Some courts hold that parents can, by fair agreement, relinquish custody of their child. And others take the view that such an agreement is effective at least to cast on the parent repudiating it the burden of showing that its enforcement would be contrary to the child's best interest and welfare. *The parent, accordingly, will not be permitted to regain custody unless he can show that such a change of custody will materially promote the child's welfare.*" (Emphasis added.)

We have found no reported Kansas case and no Kansas statute directly on point. Other jurisdictions have considered this issue. *Ex Parte McLendon*, 455 So. 2d 863 (Ala. 1984), is persuasive. There, an agreement of the parties designated that the paternal grandparents were to have custody of the minor child. The agreement was incorporated into the divorce decree and custody was awarded to the paternal grandparents who already had been caring for the child. A couple of years later, the mother filed a motion to modify custody. The child had lived with the grandparents from the age of eleven months until the time of the hearing, some five years later. The mother's visits to the child were infrequent.

The Alabama Supreme Court found that the mother had remarried and was able to provide a stable home for the child. However, the court refused to give custodial preference to the mother, stating: "A natural parent has a prima facie right to the custody of his or her child. However, the presumption does not apply after a voluntary forfeiture of custody or a prior decree removing custody from the natural parent and awarding it to a nonparent." 455 So. 2d at 865. The court held that the superior right of the mother was cut off by the prior decree awarding custody to the grandparents. The court then stated:

"The correct standard in this case is: 'Where a parent has transferred to another [whether it be a non-parent or the other parent], the custody of h[er] infant child by fair agreement, which has been acted upon by such other person to the manifest interest and welfare of the child, the parent will not be permitted to reclaim the custody of the child unless [s]he can show that a change of the custody will materially promote h[er] child's welfare.'

. . . .

"It is not enough that the parent show that she has remarried, reformed her lifestyle, and improved her financial position. [Citations omitted.] The parent seeking the custody change must show not only that she is fit, but also that the change of custody 'materially promotes' the child's best interest and welfare." 455 So. 2d at 865-66.

In the instant case, the district judge said he was applying the best interests of the child test. A review of the record shows he was applying the same test established in *McLendon, i.e.,* whether the parent has shown that a change of custody will materially promote the child's welfare:

"THE COURT: Okay. As I indicated when we started, the best interest of the child at the time would be applied due to the exception that, as I say, I feel Kansas Courts would follow, which that being the case, . . . burden of proof would clearly be on [Teresa] to carry the burden to show that it would be in the best interest of the children to change.

"The court has before it the testimony of [Teresa and her present husband], which essentially are that they care about these four children, they would like to have an opportunity to have them in their home. I have the home study in front of me. I really don't have anything before me that suggests that the children are not being well cared for and that the present circumstance is not going pretty well. Who might be the ultimate best parent is really not—I don't have anything in front of me where I can decide that. But let me say how I do view this, based upon what I've heard today and the home study, . . . the fact is that we've had a change in custody three and a half or so years ago. At that time [A.C] would have been less than a year old or about a year old. [H.C.] would have been around two. [M.C.] would have been four and [S.C.] five—or six. . . . [M]y point is that these were pretty young children at the time. The home study report talks about [H.C.] and [A.C.] not wanting to have any visits with their mother. That's not surprising. They don't know their mother. She's a stranger to them. . . . I don't blame the mother who feels that she's got her life together and cares about her children for coming in here and asking for custody. But I think an abrupt change in custody at this point in time would be harmful to these children."

On the basis of the evidence and the home study, the trial court found an abrupt change in custody would be harmful to the children. The court also found the mother's testimony essentially was that she cared about the children and would like to have them in her home. The court heard no evidence the children were not being well cared for. Nor did the court have any evidence that would show who might ultimately be the better

parent. Thus, Teresa failed to carry her burden to show that a change of custody would materially promote the welfare of her four children. The trial court did not err in denying Teresa's motion to restore custody.

Affirmed.