No. 69,506

IN THE MATTER OF THE GUARDIANSHIP OF NOLYNN GLENDON WILLIAMS, a minor child.

(869 P.2d 661)

Opinion filed March 4, 1994.

*Elizabeth Lea Henry,* of Fletcher & Mathewson, P.A., of Wichita, argued the cause and was on the brief for appellant natural mother.

*Warren M. Wilbert,* of Wichita, argued the cause and was on the brief for appellee guardian.

The opinion of the court was delivered by

HOLMES, C.J.: This is an appeal by Kathleen Williams, the natural mother of Nolynn Glendon Williams, a minor, from an order of the district court denying a petition to terminate a voluntary guardianship established for Nolynn Glendon Williams. The guardian, Cindy Hawley, opposed the petition to terminate the guardianship. We reverse.

The controlling facts are not seriously disputed. For simplicity and clarity, Kathleen Williams, the natural mother, petitioner and appellant, will be referred to as Kathleen; Cindy Hawley, the respondent guardian and appellee, will be referred to as Cindy; and the minor child and ward will be referred to as Nolynn.

Kathleen is the natural mother of Nolynn, born in Wichita on August 28, 1991. It is alleged that Sonny Garrett is the probable father of Nolynn; however, he has not assumed any responsibility for Nolynn and has not been a party to any of the guardianship proceedings. Cindy and Kathleen were longtime friends and Kathleen sought her help in babysitting with Nolynn. Cindy began babysitting with Nolynn within three weeks of his birth and by December 1991 was essentially caring for him full time. Kathleen was experiencing financial and emotional problems during this time, and in January 1992 she and Cindy agreed that Cindy should be appointed guardian of Nolynn. At that time, Cindy consulted a Wichita attorney, but the petition for guardianship was not actually prepared and signed until late in June 1992.

In the meantime, Kathleen, who describes herself as an independent contractor doing remodeling work, moved to Iowa to pursue an employment opportunity. She made periodic visits to Wichita but her visitation with Nolynn was sporadic at best. In late July 1992, Kathleen moved back to Wichita and visitation was resumed on a more regular basis.

On October 19, 1992, Nolynn was admitted to St. Francis Medical Center in Wichita where he was diagnosed with a rare kidney disease known as hemolytic uremic syndrome (HUS). He subsequently was transferred to Children's Mercy Hospital in Kansas City, Missouri, where Cindy stayed with him until his release on November 22, 1992. It appears that HUS is an ongoing

physical problem and Nolynn requires a strict diet and regular medication; he will probably require dialysis treatment in the future.

Conflict developed between Kathleen and Cindy, and on November 24, 1992, Kathleen filed a petition to terminate the guardianship and to have Nolynn returned to her care. In the original petition for guardianship filed June 29, 1992, it was alleged, *inter alia*:

"That Nolynn Glendon Williams is in need of appointment of a guardian for reason that he is a minor child and the Petitioner [Kathleen] of said child is unable at the present time to give adequate care and maintenance of said child."

The petition for guardianship was heard by the court the same date it was filed, and Cindy was appointed guardian as requested by Kathleen. There were no allegations or contentions that Kathleen was not a fit person, and the guardianship was established by agreement of the parties. If there was any evidence or testimony presented to the court at the time, it has not been included in the record on appeal. Kathleen testified at the hearing for termination of the guardianship that it was her understanding that the guardianship was necessary to allow Cindy to have the right to seek medical care for Nolynn.

In the petition to terminate the guardianship, Kathleen alleged that the original guardianship was sought because "she was temporarily unable to care for her son" and that she was "once again able to provide for the care of the minor ward [Nolynn]." While the answer filed by Cindy denied that Kathleen's inability to care for Nolynn was temporary and that Kathleen was once again able to provide for him, there were no allegations that Kathleen was an unfit mother or that she was unfit to have the care and custody of Nolynn. The answer did allege that it would be in Nolynn's best interests for the guardianship to be continued.

Kathleen's petition for termination of the guardianship was heard by the district court on February 5, 1993. There was considerable testimony about the lifestyles of Kathleen and Cindy, their plans for the future, and their respective abilities to provide the necessary physical, emotional, and medical care needed by Nolynn. A review of all the testimony reveals that there has been a bonding between Nolynn and Cindy and her husband Mel

Hawley, that Cindy and Mel are devoted to Nolynn, and that they sincerely desire to retain custody and control of Nolynn. It also appears that Kathleen, despite numerous problems, loves her son and also desires his care and custody.

In closing arguments before the trial court, Cindy's counsel did make reference to Kathleen's fitness to take Nolynn back and care for him. However, the principal thrust of the argument was to the effect that it would be in Nolynn's best interests to remain with Cindy. The trial judge correctly noted in his statement from the bench that under the pleadings and record in the case Kathleen's fitness was not an issue. The principal thrust of Kathleen's argument was that the parental preference doctrine, long recognized in Kansas, should apply. In closing the proceedings, the court directed counsel to submit proposed findings and conclusions on the issue of whether the parental preference doctrine should apply or whether the best interests of the child test should be applied as an exception to the parental preference doctrine.

Following the submission of the requested findings and conclusions, the court accepted the proposed findings of fact and conclusions of law submitted by Cindy and denied termination of the guardianship. The court ruled that its decision was controlled by *In re Marriage of Criqui,* 14 Kan. App. 2d 672, 798 P.2d 69 (1990), and that Kathleen "must show not only that she is fit, but also that the change of custody materially promotes the child's best interests and welfare." The court then concluded: "In the present case, Kathleen Williams, has failed to carry her burden to show that a change of custody would materially promote the welfare of her minor son, Nolynn Glendon Williams."

Kathleen appealed to the Court of Appeals, and the case was transferred to this court pursuant to K.S.A. 20-3017. The issue before the court is whether the district court erred in ruling that a parent seeking the termination of a voluntary guardianship must prove (1) that he or she is a fit parent and (2) that a change of custody would materially promote the child's best interests and welfare.

Kathleen contends on appeal that the district court erred in applying the rule of law recognized in *Criqui* and maintains that the Court of Appeals in that case failed to properly apply the

parental preference doctrine. Therefore, she asks that we overrule *Criqui* and terminate the voluntary guardianship established for Nolynn. In the present case, the trial court was of the opinion that *Criqui* was controlling and applied to the facts here.

The trial court made the following conclusions of law:

"(A) Kansas law has long recognized that the Parental Preference Doctrine provides that a parent who is able to care for his children and desires to do so, and who has not been found to be an unfit person to have their custody in an action or proceeding where that question is in issue, is entitled to the custody of his children as against others who have no permanent or legal right to their custody.

"(B) In cases where a nonparent has been granted the legal and physical custody of the children, the best interests of the minor children will be recognized as an exception to the Parental Preference Doctrine (*In re Marriage of Criqui,* 14 Kan. App. 2d 672, 798 P.2d 69 [1990]).

"(C) The Court's review of the facts and principles of law set forth in *In re Marriage of Criqui,* supra finds that *Criqui* is controlling and should be applied to the facts of this case.

"(D) The parent seeking the custody change must show not only that she is fit, but also that the change of custody materially promotes the child's best interests and welfare.

"(E) In the present case, Kathleen Williams, has failed to carry her burden to show that a change of custody would materially promote the welfare of her minor son, Nolynn Glendon Williams."

The rule of law in *Criqui* relied upon by the district court in the instant case states:

"When a parent transfers to another, whether it be to a nonparent or the other parent, legal custody of an infant child by fair agreement which has been acted upon by such other person to the manifest interest and welfare of the child, the parent will not be permitted to reclaim custody of the child unless the parent can show that a change of custody will materially promote the child's welfare." Syl., 14 Kan. App. 2d 672.

In *Criqui,* Roger and Teresa Criqui were divorced in 1982. At the time of their divorce, both parents agreed that Teresa would be granted custody of their two children. The agreement was incorporated in the divorce decree granting custody to Teresa. Following the divorce, an additional child was born to the couple and 18 months later Teresa had a fourth child. Teresa retained custody of all four children. In late 1985, Teresa transferred custody of her four children to her ex-husband's sisters. Both Teresa and her ex-husband agreed to the custody change, which was

subsequently approved by the court. In agreeing to relinquish her custodial rights, Teresa stated that financial problems, her inability to raise the children, and other related problems led to her decision to transfer custody of the children.

Three years later, Teresa filed a motion to restore custody of the four children to her. Teresa had recently remarried and was now able to care for and support her children. The district court denied her motion, however, finding that "an abrupt change in the custody of the minor children at that time would be harmful to the children." 14 Kan. App. 2d at 673. In doing so, the district court applied the best interests of the child test. The court determined that the best interests test was an exception to the parental preference doctrine in cases where a parent by agreement has transferred legal custody of the child to another.

The best interests test was stated in *Parish v. Parish,* 220 Kan. 131, 132, 551 P.2d 792 (1976), as follows: "In determining the right of custody of children between parents, the primary consideration is the best interest and welfare of the children, and all other issues are subordinate thereto." See *Patton v. Patton,* 215 Kan. 377, 524 P.2d 709 (1974); *Dalton v. Dalton,* 214 Kan. 805, 522 P.2d 378 (1974); *Moran v. Moran,* 196 Kan. 380, 411 P.2d 677 (1966). The Kansas courts have long applied the best interests of the child test in resolving custody disputes between two fit parents.

On the other hand, it has long been the rule that the parental preference doctrine prevails when the dispute is between a parent and a third person, unless the parent is found to be unfit. The rule is succinctly stated in *Christlieb v. Christlieb,* 179 Kan. 408, 409, 295 P.2d 658 (1956), as follows:

"[A] parent who is able to care for his children and desires to do so, and who has not been found to be an unfit person to have their custody in an action or proceeding where that question is in issue, is entitled to the custody of his children as against grandparents or others who have no permanent or legal right to their custody, even though at the time the natural parent seeks their custody such grandparents or others are giving the children proper and suitable care and have acquired an attachment for them."

The Kansas Supreme Court has held that child custody is a fundamental right of a parent, protected by the due process clause of the Fourteenth Amendment. In *Sheppard v. Sheppard,* 230

Kan. 146, 630 P.2d 1121 (1981), *cert. denied* 455 U.S. 919 (1982), the court declared as unconstitutional a statutory provision which required the court to apply the best interests test instead of the parental preference doctrine in certain parent-nonparent custody disputes. K.S.A. 1980 Supp. 60-1610(b)(2), the relevant statute, read:

"(2) At any time after custody of any minor child has been awarded pursuant to a divorce, annulment or separate maintenance decree, any person who has had actual physical custody of any such child after such decree was rendered with the consent of the parent having legal custody, where applicable, may request by motion to the court rendering such decree that legal custody of such child or children be awarded to such person. Notwithstanding the parental preference doctrine the court may award custody of any such child to such person if the best interests of such child will be served thereby."

In *Sheppard*, Catherine and Steven were divorced in 1977, with Catherine being awarded legal custody of their son. Prior to and during their marriage, both Catherine and her son lived with Catherine's parents in Haysville, Kansas. Following the divorce, however, Catherine moved to Wichita while her son continued to live with his grandparents and attend the Haysville schools. In 1980, Catherine's parents petitioned the court, seeking custody of their grandson. Although the district court found that Catherine was not an unfit parent, the court terminated her custodial rights, placing her son in the permanent custody of her parents.

In reversing the district court's order, this court stated:

"The United States Supreme Court recently recognized the fundamental nature of the relationship between parent and child in two cases, both of which involve the rights of natural parents of illegitimate children: *Stanley v. Illinois*, 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972), and *Quilloin v. Walcott*, 434 U.S. 246, 255, 54 L. Ed. 2d 511, 98 S. Ct. 549, *reh. denied* 435 U.S. 918 (1978). In the latter case the court said:

'We have little doubt that the Due Process Clause would be offended '[i]f a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest.'

. . . .

"It is clear under our decisions and those of the United States Supreme Court that a natural parent's right to the custody of his or her children is a fundamental right which may not be disturbed by the State or by third

persons, absent a showing that the natural parent is unfit. As we noted in *In re Cooper*, 230 Kan. 57, 631 P.2d 632 (1981), a parent's right to the custody, care, and control of his or her child is a fundamental liberty right protected by the Fourteenth Amendment of the Constitution of the United States.

"... [The natural mother] cannot be denied that right for the sole reason that a court determines and concludes that someone other than a natural parent might do a better job of raising the child, thus furthering his 'best interests.'

. . . .

"What we hold here is simply this: that a parent who is not found to be unfit, has a fundamental right, protected by the Due Process Clause of the United States Constitution, to the care, custody and control of his or her child, and that the right of such a parent to custody of the child cannot be taken away in favor of a third person, absent a finding of unfitness on the part of the parent. We hold that K.S.A. 1980 Supp. 60-1610(b)(2), which destroys that fundamental right, is violative of the Due Process Clause and therefore unconstitutional." 230 Kan. at 150-54.

Kathleen contends that the rule of law stated in *Sheppard* is controlling in the instant case and argues that *Criqui* is inconsistent with *Sheppard* and our statutory scheme of determining custody matters. She requests that this court overturn *Criqui*, or in the alternative, hold that it is not controlling under the facts of the instant case.

The court in *Criqui* characterized the *Sheppard* decision as narrow in scope and not controlling under the facts of *Criqui*. Specifically, the court determined that the parental preference doctrine did not apply in custody disputes where a parent had previously transferred custodial rights to another person, regardless of whether that person was a nonparent or the other parent. The court relied upon its narrow construction of *Sheppard* and stated that it found no Kansas case or statute directly on point. 14 Kan. App. 2d at 676. The court then turned to a decision of the Alabama Supreme Court to reach its conclusion that if a parent has transferred custody of a child to another person, the parent may not reclaim custody of the child unless it is shown that the change will materially promote the child's welfare, *Ex Parte McLendon*, 455 So. 2d 863 (Ala. 1984). In doing so, the *Criqui* court apparently overlooked a long line of Kansas cases to the contrary.

At the root of the parental preference doctrine is the recognition in Kansas that public policy deems the doctrine as being in the best interests of the child. In *In re Kailer,* 123 Kan. 229, 255 Pac. 41 (1927), the natural father of eleven-day-old twins entrusted the care of the children to his brother and sister-in-law. The natural mother had died and the father was unable to properly care for the newborn infants. Several years later he sought to regain custody of the children. This court stated:

"[T]he welfare of children is always a matter of paramount concern, but the policy of the state proceeds on the theory that their welfare can best be attained by leaving them in the custody of their parents and seeing to it that the parents' right thereto is not infringed upon or denied. This is the law of the land on this subject. And it never becomes a *judicial* question as to what is for the welfare and best interests of children until the exceptional case arises where the parents are dead, or where they are unfit to be intrusted with the custody and rearing of their children and have forfeited this right because of breach of parental duty, or where the right has been prejudiced by the discord of the parents themselves." 123 Kan. at 231.

The Court of Appeals' determination in *Criqui* that the parental preference doctrine does not apply when the parent seeking to regain custody had earlier relinquished legal custody by agreement is not borne out by the case law of Kansas.

*In re Brown,* 98 Kan. 663, 159 Pac. 405 (1916), involved a custody dispute between the natural mother and a court-appointed guardian of her minor child. Mary A. Brown, the natural mother of Louise, was appointed the guardian of her daughter upon the death of her husband. Thereafter she resigned as guardian and P.N. Johnson was appointed guardian of Louise. Later, having remarried, the mother sought to have the custody of Louise restored to her, in an original action in habeas corpus which was contested by the guardian. The court held:

"The right of a mother to the custody of her child is not impaired by an order of the probate court appointing a guardian, notwithstanding a recital therein that the guardianship extends to the person as well as the property, where no issue concerning the mother's fitness in that regard was actually presented or determined in the proceeding in which such appointment was made." 98 Kan. 663, Syl. ¶ 1.

*Johnson v. Best,* 156 Kan. 668, 135 P.2d 896 (1943), was a habeas corpus action filed in the district court by the natural mother against a court-appointed guardian. Mrs. Johnson, the

mother, placed her two-year-old child in the care of Mrs. Best. Pursuant to their agreement, the mother provided support payments to Mrs. Best for her child's care and maintenance. Several years later, the mother moved to California where she remarried and established permanent residence. During this same period, Mrs. Best petitioned the court and was appointed guardian of the child. Mrs. Johnson was given no notice of the guardianship proceeding. Six years after leaving her child with Mrs. Best, the mother sought to regain custody. In affirming the trial court's decision granting the mother's petition, the Supreme Court questioned the jurisdictional validity of Mrs. Best's appointment as guardian. However, the court determined that the validity of the appointment was not dispositive on the underlying issue of whether the mother had a right to regain custody of her child. In relevant part the court stated: "Had the appointment of appellant as guardian been valid, appellee would not have been deprived of the custody of her child by virtue of such appointment where appellee's fitness was not made an issue and determined against her in the proceedings for the appointment of appellant as guardian." 156 Kan. at 671. In making its determination that the natural mother was entitled to custody, absent a showing of unfitness, even as against a validly appointed guardian, the court relied upon its earlier decision in *Brown* and *Melroy v. Keiser,* 123 Kan. 513, 255 Pac. 978 (1927). In *Melroy,* the dispute was between the natural father and the child's maternal grandmother, who had been appointed the child's guardian. In granting custody to the father, the court held:

"The right of the father (the mother being deceased) to the custody of his minor child is not impaired by an order of the probate court appointing another as guardian of the person of such child where no issue concerning the father's fitness in that regard was presented to or determined by the probate court in the proceeding in which such appointment was made." 123 Kan. 513, Syl. ¶ 2.

*Jones v. Jones,* 155 Kan. 213, 124 P.2d 457 (1942), involved an attempt by the natural mother, Doris Jones, to regain custody of her minor child, Madalene, from the paternal grandmother who had custody under an order issued in the original divorce case between Madalene's parents. The procedural facts were set out by the court as follows:

"On December 6 the parties filed with the court a written stipulation by which they agreed 'that the care, custody and control of the minor child of said litigants, Madalene Irene Jones, shall be given over to Mabel Jones of Toronto, Kan., grandmother of said child, pending further orders of the court with respect to said child's care, custody and control.'. . . . This stipulation was considered and approved by the court on December 6, 1938. Plaintiff was granted a divorce, and custody of the child was given to defendant's mother, Mabel Jones, pending the further order of the court.

"Early in 1941—the exact date not shown—plaintiff filed in the divorce action an application for an order modifying the previous order respecting the custody of the child and asking that she be granted the care, custody and control of the child." 155 Kan. at 214-15.

The trial court had denied the mother's application for a change of custody stating, in part, "[T]he welfare of said child would be best subserved by continuing the care, custody and control of the child in the grandmother's custody." 155 Kan. at 217. In reversing the trial court, this court stated:

"It is firmly established by repeated decisions of this court that a parent who is able to care for a child and desires to do so, and who has not been found to be an unfit person to have the custody of the child, in an action or proceeding where that question is in issue and upon competent evidence, is entitled to the custody of the child as against grandparents or others who have no permanent legal right to the custody of the child, even though at the time they are giving the child suitable care and have acquired an attachment for the child." 155 Kan. at 219.

The court went on to state:

"The record clearly shows appellee is a good woman, that she is attached to the child, and would give her good care, in sickness or health. Appellant freely so testified at each of the hearings, and there is no evidence to the contrary. But, as determined in many of the cases hereinbefore cited, those facts are not controlling; indeed, they are of no weight as against a parent who has not been adjudged to be an unfit person to have the custody of a child, when asserted by one who is not a parent." 155 Kan. at 220.

In *Christlieb v. Christlieb*, 179 Kan. 408, 295 P.2d 658 (1956), the court was again faced with an appeal by the mother from an order denying her custody of her minor children placed in the custody of the maternal grandmother by court order entered at the time of the original divorce. On April 21, 1954, Alma Christlieb obtained a divorce from her husband. At the time, the court ordered custody of the four minor children be placed with Alma's mother. There was no finding in the divorce proceeding that

Alma was unfit. Subsequently, Alma remarried and on several occasions sought to obtain custody of the children, but on each occasion her application was denied. At none of the hearings was Alma found to be an unfit mother, and she finally appealed the last order denying her custody. In reversing the trial court, this court followed the rule set forth in *Jones* and also as quoted earlier in this opinion.

In *Hamm v. Hamm,* 207 Kan. 431, 485 P.2d 221 (1971), the mother voluntarily relinquished custody of her four children after filing for divorce and becoming financially unable to provide for her children. In a written agreement which was approved by the district court, the mother allowed her two oldest children to stay with their paternal grandparents while her two youngest children stayed with their paternal great-aunt and -uncle. One year following the court-approved arrangement, the mother sought custody of her two oldest children, which was granted one year later. Two years later, the mother sought to regain custody of her two other children; however, she was denied their custody, being found unfit by the court. The district court granted permanent custody of the two youngest children to their paternal great-aunt and -uncle.

In reversing the district court's decision, the Supreme Court held there was no substantial evidence to support the lower court's finding that the mother was unfit. Additionally, the Supreme Court held the lower court abused its discretion in denying the mother's motion to regain custody of her two children. In declaring that the mother had a right to the custody of her children as against other parties, the court relied on *Stout v. Stout,* 166 Kan. 459, 201 P.2d 637 (1949). In doing so, it quoted the following language from *Stout*:

"Under our recent and often repeated decisions, to which we have strictly adhered for many years, the established and inviolate rule has been and now is that a parent who is able to care for his children and desires to do so, and who has not been found to be an unfit person to have their custody, in an action or proceeding where that question is in issue, is entitled to the custody of his children as against grandparents or others who have no permanent or legal right to their custody, even though at the time the natural parent seeks their custody such grandparents or others are giving the children proper and suitable care and have acquired an attachment for them." 166 Kan. at 463.

Another decision that holds contrary to the *Criqui* rule is *Herbst v. Herbst,* 211 Kan. 163, 505 P.2d 294 (1973). In *Herbst,* the parties were divorced in 1966 with the custody of their daughter being awarded to the mother. Shortly following their divorce, the 17-year-old mother was sentenced to a girl's correctional school, and temporary custody of the child was granted to the child's maternal grandparents. Following her release, the mother remarried and in 1971 sought to regain permanent custody of her daughter. Although the district court held there was no finding of unfitness of the mother, the court denied her motion. In reversing the district court's decision, the Supreme Court stated: "In the absence of an adjudication that a natural parent is unfit to have custody of a child, the parent has the paramount right to custody as opposed to third parties—even, as here, they happen to be her own parents and the child's grandparents." 211 Kan. 163.

Numerous other decisions of this court which in effect apply the parental preference doctrine when the dispute is between a parent, who has not been found unfit, and a third-party nonparent who obtained custody by court order could be cited, but the foregoing are representative of the longstanding rule.

For representative cases following the same rule in cases where custody was placed in a third party by agreement, without any court order, see *In re Rhea,* 207 Kan. 610, 485 P.2d 1382 (1971); *In re Vallimont,* 182 Kan. 334, 321 P.2d 190 (1958); *In re Kailer,* 123 Kan. 229, 255 Pac. 41 (1927); *Swarens v. Swarens,* 78 Kan. 682, 97 Pac. 968 (1908).

The best interests of the child test, which is asserted here by Cindy, has long been the preferred standard to apply when the custody of minor children is at issue between the natural parents of the child or children. However, absent highly unusual or extraordinary circumstances it has no application in determining whether a parent, not found to be unfit, is entitled to custody as against a third-party nonparent. As stated in *In re Eden,* 216 Kan. 784, 786-87, 533 P.2d 1222 (1975):

"The cases where we have held the 'best interests' test applicable were all cases where the dispute was between parents. [Citations omitted.] Where, as here, the dispute is between strangers and a natural parent who is not unfit and who is able and willing to care for the children, the parent's right

must prevail. This is so even though the trial court might feel that it would decide otherwise if free to consider only the 'best interests' of the children, apart from the benefits to be derived from the love and care of the natural parent."

Not only is the parental preference doctrine one of long standing in Kansas, it is also the rule, in one form or another, in a majority of the jurisdictions in this country. See *Ex Parte Terry*, 494 So. 2d 628 (Ala. 1986); *Buness v. Gillen*, 781 P.2d 985 (Alaska 1989); *Schuh v. Roberson*, 302 Ark. 305, 788 S.W.2d 740 (1990); *Root v. Allen*, 151 Colo. 311, 377 P.2d 117 (1962); *In re R.L.L. and J.M.L.*, 258 Ga. 628, 373 S.E.2d 363 (1988); *Stockwell v. Stockwell*, 116 Idaho 297, 775 P.2d 611 (1989); *In re custody of Peterson*, 112 Ill. 2d 48, 491 N.E.2d 1150 (1986); *Glass v. Bailey*, 233 Ind. 266, 118 N.E.2d 800 (1954); *Davis v. Collinsworth*, 771 S.W.2d 329 (Ky. 1989); *Pastore v. Sharp*, 81 Md. App. 314, 567 A.2d 509 (1989), *cert. denied*, 319 Md. 304 (1990); *Durkin v. Hinich*, 442 N.W.2d 148 (Minn. 1989); *Guardianship of J.R.G.*, 218 Mont. 336, 708 P.2d 263 (1985); *Peterson v. Peterson*, 224 Neb. 557, 399 N.W.2d 792 (1987); *Zack v. Fiebert*, 235 N.J. Super. 424, 563 A.2d 58 (1989); *Merritt v. Way*, 58 N.Y.2d 850, 446 N.E.2d 776 (1983); *Phillips v. Choplin*, 65 N.C. App. 506, 309 S.E.2d 716 (1983); *Worden v. Worden*, 434 N.W.2d 341 (N.D. 1989); *Hruby and Hruby*, 304 Or. 500, 748 P.2d 57 (1987); *Michael T.L. v. Marilyn J.L.*, 363 Pa. Super. 42, 525 A.2d 414 (1987); *Skeadas v. Sklaroff*, 84 R.I. 206, 122 A.2d 444 (1956), *cert. denied* 351 U.S. 988 (1956); *Moore v. Moore*, 300 S.C. 75, 386 S.E.2d 456 (1989); *Langerman v. Langerman*, 336 N.W.2d 669 (S.D. 1983); *Bush v. Bush*, 684 S.W.2d 89 (Tenn. App. 1984); *Nielson v. Nielson*, 818 P.2d 1043 (Utah App. 1991); *Paquette v. Paquette*, 146 Vt. 83, 499 A.2d 23 (1985); *Bailes v. Sours*, 231 Va. 96, 340 S.E.2d 824 (1986); *Ford v. Ford*, 172 W. Va. 25, 303 S.E.2d 253 (1983); *In re Kosmicki*, 468 P.2d 818 (Wyo. 1970).

Additional discussion on this issue may be found in several leading secondary authorities. 67A C.J.S., Parent and Child § 26, p. 253, reads: "Where there is no intent permanently to relinquish a child's custody, but the parent surrenders the child temporarily because of illness or financial difficulties, the parent will not be deprived of the right to reclaim the custody when the situation changes for the better." Elrod, Child Custody Prac. and

Proc. § 4.06 (1993): "As a general rule, parents as natural guardians have superior rights to the custody of their child over nonparents unless the parents are unfit or extraordinary circumstances exist."

In *Criqui*, the court seized upon the words from many of our cases in which we have held the parental preference doctrine controls against nonparents "who have no permanent or legal right" to the child's custody to fashion an unjustified exception to the general rule. As made clear by our many decisions on the issue, the "legal right" referred to means a permanent legal relinquishment by adoption, severance of parental rights, or other appropriate proceedings terminating the parent-child relationship. The "legal right" referred to does not contemplate court orders granting custody in divorce, guardianship, or similar proceedings where the parent-child relationship is not severed or terminated and the order is not permanent but one subject to reconsideration, modification, or termination by the court.

We adhere to the rule that absent highly unusual or extraordinary circumstances the parental preference doctrine is to be applied in a custody dispute over minor children when the dispute is between a natural parent who has not been found unfit and a nonparent. Likewise, we adhere to the rule that the best interests of the child is the appropriate standard to be applied in custody disputes between parents.

We conclude that the holding set forth in *In re Marriage of Criqui*, 14 Kan. App. 2d 672, 798 P.2d 69 (1990), was clearly erroneous and it is therefore overruled. In the present case, the trial court erred in holding that Kathleen was required to show that a change of custody would materially promote the welfare of her minor son, Nolynn, before she could regain custody and terminate the existing guardianship. As Kathleen was not found unfit, she is entitled to the relief sought.

The judgment of the district court is reversed.